[Cite as *Schrenk v. Butler*, 2017-Ohio-8745.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| John Schrenk, | : | |
| Appellant-Appellee, | : | No. 16AP-504 |
| v. | : | (ERAC No. 15-6851) |
| Craig W. Butler, Director Ohio Environmental Protection Agency, | : | (REGULAR CALENDAR) |
| | : | |
| Appellee-Appellant. | : | |

D E C I S I O N

Rendered on November 30, 2017

*John Schrenk*, pro se.

**On brief:** *Michael DeWine*, Attorney General, *L. Scott Helkowski*, and *Tasha N. Miracle*, for appellant. **Argued:** *Tasha N. Miracle.*

APPEAL from the Environmental Review Appeals
Commission

BRUNNER, J.

{¶ 1} Appellant here, appellee below, the Ohio Environmental Protection Agency ("OEPA"), appeals a decision of the Environmental Review Appeals Commission ("ERAC") issued on June 8, 2016, which reversed in part and affirmed in part a decision by the director of OEPA. The director's decision, which issued on June 10, 2015, had determined to suspend John Schrenk's Class II Water Supply Operator Certificate and Class III Wastewater Treatment Operator Certificate for a period of five years. Because we find ERAC's criticisms of OEPA director's decision to be without merit, we now reverse and reinstate the decision of OEPA's director.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}    On April 11, 2014, OEPA sent a letter to Schrenk asserting that he had violated record-keeping requirements for hours spent running and maintaining various water supply and wastewater treatment facilities, had not spent sufficient hours inspecting and maintaining such facilities as required by regulations, had operated a facility he was not qualified to operate, and had operated one facility above its rated capacity.  (Hearing Ex. 18.)  The letter informed Schrenk that a suspension of five years would be imposed unless he requested a hearing to dispute the allegations.  *Id.*  On May 4, 2014, Schrenk requested a hearing on the matter.  (OEPA Docket Item 15.)

{¶ 3}    After a number of status conferences, OEPA held a hearing before a hearing examiner on December 16, 2014.  (Dec. 16, 2014 Hearing Tr.; *see also* OEPA Docket Items 11-14.)  In an order issued November 5, 2014, OEPA required that the parties file a prehearing statement with OEPA on or before December 9 identifying documents and evidence to be introduced at the hearing.  (OEPA Docket Item 11.)  OEPA timely filed a prehearing statement identifying documents.  (OEPA Docket Item 10.)  However, the day prior to the hearing, on December 15, 2014, OEPA filed an amended list that added three subject-matter groups of documents likely to be introduced and removed one group of documents from its previous list.  (OEPA Docket Item 9.)

{¶ 4}    At the hearing, Andrew Barienbrock testified on behalf of OEPA.  (Hearing Tr. at 13.)  Barienbrock testified that he was an environmental manager for OEPA and had been with OEPA in that capacity and other supervisory capacities for more than 11 years. *Id.*  Barienbrock also testified at length to his extensive experience and education in the field of environmental management.  *Id.* at 13-18. Barienbrock testified from knowledge of OEPA's business records about 20 exhibits introduced by OEPA at the hearing.  *Id.* in passim. Schrenk did not object to any of these exhibits or to Barienbrock's testimony.  And when he was specifically offered a chance to object Schrenk, declined to do so:

> [COUNSEL FOR OEPA]: Thank you. At this time, your Honor,
> I would like to move to enter all the exhibits into evidence.
>
> HEARING EXAMINER WILSON: Any objections?
>
> MR. SCHRENK: No.

> HEARING EXAMINER WILSON: All the exhibits are so entered.
>
> (EXHIBITS ADMITTED INTO EVIDENCE.)

*Id.* at 79.

{¶ 5} Exhibits 1 through 5, according to Barienbrock's testimony, list Schrenk as Operator of Record for drinking water production facilities and wastewater treatment facilities at St. Hazards Resort and the Lake Erie Utilities Company. *Id.* at 19-27; *see also* Hearing Exs. 1-5. According to the records, he became Operator of Record at the two Lake Erie Utilities plants on April 2, 2012 and the two St. Hazards Resort plants on June 1, 2012. (Hearing Tr. at 19-27; Hearing Exs. 1-5). With respect to the Lake Erie Utilities Public Water Supply, Schrenk's service as Operator of Record was problematic, according to Barienbrock, because the facility was a Class III Public Water Supply, and in 2012, Schrenk only held a Class II Water Supply Operator Certificate. (Hearing Tr. at 23-26.) This was not merely an academic problem according to Barienbrock, because the Class II certification is for treatment of ground water and not surface water, and each presents different treatment and safety concerns. *Id.* at 25. The Lake Erie facility was a Class III facility treating Lake Erie surface water for drinking. *Id.* at 25, 82-83. Barienbrock testified from the records that Schrenk was not removed as an Operator of Record from the Lake Erie Utilities Public Water Supply until 2013. *Id.* at 26-27; Hearing Ex. 5.

{¶ 6} OEPA introduced logbooks for the Lake Erie Utilities Wastewater Treatment Plant, for the Lake Erie Utilities Public Water System, for the St. Hazard Water Treatment Plant, and the St. Hazard Wastewater Treatment Plant as Exhibits 7-10 respectively. (Hearing Tr. at 36-47.) Each logbook shows that Schrenk almost never recorded his time in or out for the sites and rarely entered details about his repair or maintenance work at each site. *Id.*; *see also* Hearing Exs. 7-10. Barienbrock testified that this conduct violated several regulations and stated:

> It's important for operators to document exactly what they are doing at the facilities so that Ohio EPA can see what's going on and also to ensure that they protect themselves in the event that there is an issue. Certified operators are part of Ohio EPA's multi-barrier approach to ensuring compliance at facilities. Ohio EPA can't be at every facility every day of the week and certified operators act as our arm out in the field and they are ensuring us that they are doing things properly at facilities and

> this logbook and the information that is contained in the documentation that shows that they are doing their job correctly.

(Hearing Tr. at 38-39.)  Barienbrock further explained that OEPA relies on recorded in and out times to ensure minimum staffing at treatment plants such that at least what is barely necessary to keep plants operating is assured for public safety.  *Id.* at 29-31. Based on the log books, Barienbrock could not testify that minimum staffing levels were met at the Lake Erie Utilities wastewater treatment and drinking water facilities.  *Id.* at 47-51; *see also* Hearing Exs. 11-12 (enforcement logs created by OEPA based on log books to reconstruct when, according to the log books, someone was on site at the Lake Erie Utilities plants and for how long).

{¶ 7}    Barienbrock next identified a number of notices of violation.  He testified that on May 9, 2012 (according to a June 12, 2012 notice of violation to Lake Erie Utilities Company), the Lake Erie Utilities Public Water Supply failed to monitor the residual disinfectant concentration of the water entering the distribution system once every four hours while the plant was in operation.  (Hearing Tr. at 56-57; Hearing Ex. 14.)  Barienbrock explained that the same facility was evaluated by OEPA according to a September 2012 notice of violation.  (Hearing Tr. at 67-69; Hearing Ex. 16.)  Among a host of issues, OEPA found that the facility was exceeding its approved capacity in May, June, July, and August 2012, the staff were not calibrating the turbidity meters, and OEPA was not able to document minimum staffing requirements on multiple occasions during the past year based on the logs kept.  (Hearing Tr. at 67-69; Hearing Ex. 16.)  Barienbrock also testified concerning another notice of violation that, on October 1-4, 7-10, 13, 15, 20, 27, 30, and 31, 2012, the same plant failed to monitor the temperature of the water for the purpose of determining chlorine contact time to ensure the appropriate pathogen kill rate and also that the plant exceeded its maximum rated flow rate for 14 days in October 2012.  (Hearing Tr. at 57-60; Hearing Ex. 15.)  He testified these problems to both be a risk to the public health. (Hearing Tr. at 57-60.)  Finally, Barienbrock identified an August 1, 2013 notice of violation that he had drafted, citing that Schrenk did not document times in or out, that minimum staffing levels were not met, that entries of repairs and maintenance were insufficient, that the old plant was in an unacceptable condition according to an audit, and that effluent

violations of nitrogen, ammonia, and suspended solids had been occurring.  (Hearing Tr. at 60-71; Hearing Ex. 17.)

{¶ 8}  Throughout the hearing, Barienbrock also testified that Schrenk violated multiple regulations, and he detailed the content of each regulation and Schrenk's specific conduct that violated it.  (Hearing Tr. at 28-29 (discussing Ohio Adm.Code 3745-7-09(A)(3)(b) record-keeping of date and times of arrival and departure for operators of record); Hearing Tr. at 31-32 (discussing Ohio Adm.Code 3745-7-09(A)(3)(c) requirement that operators note maintenance activities that have the potential affect quality of sewage or water conveyed or produced); Hearing Tr. at 54-56 (discussing former Ohio Adm.Code 3745-83-01(H)(2) (effective April 19, 2012)[1] requiring the Operator of Record to sign Monthly Operating Reports ("MORs") attesting to the accuracy of information contained therein); Hearing Tr. at 62 (discussing Ohio Adm.Code 3745-7-09(C)(1) requiring operators to perform responsible and effective on-site management and supervision of technical operation); Hearing Tr. at 27-28 (discussing Ohio Adm.Code 3745-7-12(A)(7) being Operator of Record without appropriate certification); Hearing Tr. at 29-31 (discussing Ohio Adm.Code 3745-7-03(C) and 3745-7-04(C) minimum staffing requirements for public water and wastewater systems); Hearing Tr. at 60-61 (discussing Ohio Adm.Code 3745-91-02(A) and 3745-91-08(G)(1) requiring prior approval before any change to a plant, including a change in capacity, and prohibiting changes not within plan); Hearing Tr. at 64-66 (discussing Ohio Adm.Code 3745-7-12(A)(2) making incompetence and negligence in fulfilling duties of an operator grounds for revocation or suspension of certifications); Hearing Tr. at 66-67 (discussing Ohio Adm.Code 3745-7-12(A)(4) prohibiting operation in a manner endangering the public health and providing suspension or revocation of certifications as a penalty).)

{¶ 9}  Barienbrock summed up Schrenk's problems:

> Ohio uses a multi-barrier approach to protecting public health and safety in both water and wastewater treatment. One of those barriers is the certified operator. We depend on certified operators to be a professional in the field. We depend on that person to be knowledgeable and experienced in water and wastewater treatment. And we depend on that person to kind

---

[1] This provision is included in the current rule at Ohio Adm.Code 3745-83-01(I)(2).

of be our eyes and ears in the field because we don't have enough staff to be at the facilities on a daily or weekly basis.

That person is out there. That person is knowledgeable of the rules and is knowledgeable of treatment. They have demonstrated that knowledge through that experience and through the examination they take. They also are required to get continuing education to keep up with things that are in their field, to keep up with treatment practices, to keep up with the rules and regulations related to their field, so based on that information, we depend on those people to be knowledgeable experts out there.

Owners of treatment facilities hire these people for their expertise. The owners aren't familiar with Ohio EPA's rules and regulations. They depend on these certified professional — these certified professional individuals to guide them through the process of dealing with the Ohio EPA and ensuring compliance and protecting public health and safety.

(Hearing Tr. at 77-78.)

{¶ 10} Schrenk presented neither witnesses nor exhibits at the hearing and, when given a chance to testify on his own behalf, declined to do so:

HEARING EXAMINER WILSON: You don't care to take the witness stand?

MR. SCHRENK: No, sir.

*Id.* at 84. Virtually the only remarks Schrenk made during the hearing were in closing arguments as follows:

MR. SCHRENK: I did take advantage of training. I kept my licenses current. I took classes at the Elyria water works so I co — classes at the Elyria water works so I could pass my III and over the years I took sanctioned classes at a different Water Works in Lorain, you know, to pass tests. So I did take advantage of classes.

These exhibits in here are just not complete. If you look at them, you'll see that I — maybe I didn't put the time in and the time out, but I put in about repairs. It was a real mess up there. I don't know if it's still a mess or not. I tried to help, and I guess I didn't. That's all.

*Id.* at 88-89.

{¶ 11} Both parties submitted detailed post-hearing briefs. (OEPA Docket Items 6-7.) OEPA objected to Schrenk's brief on the grounds that it asserted and relied upon facts

that were not introduced or testified to during the hearing. (OEPA Docket Item 5 (citing Ohio Adm.Code 3745-47-12(G) for the proposition that new facts may not be introduced outside of the hearing unless after the conclusion of an adjudication hearing and prior to the submission of a report and recommendation, the hearing examiner, upon motion of a party, may permit the parties to file newly discovered documentary evidence that by due diligence could not have been discovered prior to the adjudication hearing).)

{¶ 12} On March 26, 2015, the hearing officer released a report and recommendation concluding that Schrenk had violated a number of Ohio Administrative Code regulations on numerous occasions, some of which endangered public health and welfare. (OEPA Docket Item 3 at 19-24.) Two weeks later, on June 10, 2015, the director of OEPA adopted the findings and conclusions of the hearing officer and ordered suspended for five years Schrenk's Class II Water Supply Operator Certificate (WS2-1012476-11) and Class III Wastewater Treatment Operator Certificate (WW3-1012476-96). (OEPA Docket Item 2.)

{¶ 13} On July 13, 2015, Schrenk filed a letter declaring his intention to appeal. (ERAC Docket Item A.) ERAC construed the letter as a notice of appeal but ordered Schrenk to file and properly serve an amended notice of appeal including the facts and issues of the appeal under Ohio Adm.Code 3746-5-07. (ERAC Docket Item B.) On August 12, 2015, after a preliminary prehearing conference, ERAC again ordered Schrenk to file an appropriate notice of appeal, this time by September 2, 2015, or face dismissal for want of prosecution. (ERAC Docket Item E.)

{¶ 14} On September 2, 2015, Schrenk filed a notice of appeal setting forth four issues for review. (ERAC Docket Item F.) The first was that OEPA e-mailed additional evidence to him on the morning of the hearing. *Id.* at 1. The second was that OEPA did not consider his time card records and instead merely relied on the log books. *Id.* Had OEPA considered both, Schrenk asserted, it would have realized there were more hours worked than necessary to fulfill the minimum staffing requirements. *Id.* The third was that he was not the Operator of Record for the Lake Erie Utility Public Water Supply and thus the fact that the water temperature was not recorded in order to appropriately time the contact with the purifying agent was not his responsibility.[2] *Id.* Fourth, that he was turned down as a

---

[2] Schrenk incorrectly references Exhibit 14 here when he is discussing Exhibit 15.

potential Operator of Record for the Lake Erie Utility Public Water Supply due to his insufficient certification on May 8, 2012, and thus the later violations as to that plant cannot be attributed to him. *Id.* at 1-2. Schrenk also manifested an intention to introduce further exhibits and call further witnesses during the appeal.

{¶ 15} On January 14, 2015, Schrenk provided ERAC with copies of his Uni-Tech Environmental Services Inc. time sheets for the relevant time period. (ERAC Docket Item N.) The sheets showed he had as few as 13 to 14 hours in some two-week periods and as many as 51 hours in others. *Id.* Both parties presented briefs (Schrenk attempted to include exhibits with his) and both sides appeared and argued at oral argument.[3] (ERAC Docket Items O-P; Schrenk ERAC Hearing Exs.) Following argument, upon request of ERAC, OEPA supplemented the record with materials that were not introduced in the original hearing. (ERAC Docket Item Q.)

{¶ 16} On June 8, 2016, ERAC issued a decision affirming in part and reversing in part OEPA's decision. (June 8, 2016 ERAC Decision). ERAC reversed in three respects: ERAC reversed OEPA's findings that Schrenk had failed to meet minimum staffing requirements, that he had violated record keeping requirements by failing to include certain information in MORs, and that Schrenk had violated certification regulations by allowing Lake Erie Utilities Public Water Supply to operate above its approved capacity. (ERAC Decision at ¶ 108.)

{¶ 17} OEPA now appeals, and it filed a timely brief on August 9, 2016. Schrenk filed no brief.[4]

## II. ASSIGNMENTS OF ERROR

{¶ 18} OEPA argues two assignments of error.

> [1.] The Environmental Review Appeals Commission unlawfully shifted to the Director the burden of proving a negative when it determined that Mr. Schrenk's failure to record his arrival and departure times did not establish that Mr. Schrenk failed to meet minimum staffing requirements.

---

[3] No transcription of the argument before ERAC has been made part of the record before this Court.

[4] Schrenk did file a letter with this Court six days before OEPA's brief making a number of accusations, assertions, and arguments generally unrelated to the limited issues before this Court. As this document failed to comply with substantially any of the rules applying to the submission of briefs before this Court, we do not regard it as an appellee brief and consider it no further.

[2.] The Environmental Review Appeals Commission erred in *sua sponte* determining that Mr. Barienbrock's testimony concerning certain Notices of Violation was inadmissible hearsay.

## III. DISCUSSION

### A. Standard of Review

{¶ 19} ERAC was confined by statute to the record certified to it from OEPA's adjudicatory hearing:

> In hearing the appeal, if an adjudication hearing was conducted by the director of environmental protection in accordance with sections 119.09 and 119.10 of the Revised Code * * *, the environmental review appeals commission is confined to the record as certified to it by the director * * * .

R.C. 3745.05(A). And the "commission may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the director." *Id.* Based on the record, "[i]f * * * the commission finds that the action appealed from was lawful and reasonable, it shall make a written order affirming the action, or if the commission finds that the action was unreasonable or unlawful, it shall make a written order vacating or modifying the action appealed from." R.C. 3745.05(F).

{¶ 20} This Court must affirm an ERAC order if it "is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 3745.06. "[T]his court affords due deference to ERAC's resolution of evidentiary conflicts." *Helms v. Koncelik*, 187 Ohio App.3d 231, 2010-Ohio-1782, ¶ 20 (10th Dist.). Questions of law, however, are reviewed de novo. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 34 ("Courts review questions of law de novo.").

### B. First Assignment of Error — Proving a Negative and Minimum Staffing

{¶ 21} ERAC decided the hearing officer and OEPA director should not have concluded from Schrenk's failure to record his in and out times in the logs that he had not satisfied minimum staffing standards. ERAC stated:

> By its very nature, Mr. Schrenk's failure to record arrival and departure times resulted in a *lack of information* regarding the time he was present on certain occasions. It did not, however, *affirmatively establish that he was absent*. In fact, by creating an entry in the log books, albeit without specific information regarding duration, Mr. Schrenk provided evidence that he

> may have been present on those days. Accordingly, the Commission finds the Director lacked a valid factual foundation for his conclusion that Mr. Schrenk failed to satisfy minimum staffing requirements at each of the four facilities at issue in this appeal.

(Emphasis sic.) (ERAC Decision at ¶ 85.)

{¶ 22} According to Ohio Adm.Code 3745-47-15(A), the burden of proof "with respect to applications for permits, licenses, variances, certificates, or other authorizing actions" is upon the applicant. But division (B) of the rule provides that when revocations, orders, or modifications are initiated by the agency, the burden of proof is on the agency. Ohio Adm.Code 3745-47-15(B)(1) through (3). Since OEPA sought to suspend Schrenk's certifications, it bore the burden. Ohio Adm.Code 3745-47-15(B).

{¶ 23} But OEPA argues division (D), an exception to the burden established by division (A) of the rule. Division (D) provides that "[n]otwithstanding paragraph (A) of this rule, there shall be a legal presumption in favor of facts asserted by a party that can be disproved by evidence available to and under the control of an opposing party. In order to rebut this presumption, the party having control of such evidence shall show that the nonexistence of the presumed fact is more likely than the existence of such fact." Ohio Adm.Code 3745-47-15(D). But division (B) of the rule is not affected by division (D). *Id.* As a matter of law, the burden of proof set forth in division (B) rather than (A) was to control at the agency adjudicatory hearing. *See supra*, at ¶ 22.

{¶ 24} Thus the question on review must be analyzed according to whether it was "reasonable" under R.C. 3745.05 for the director and hearing officer to have concluded that OEPA had met its burden to prove Schrenk violated the minimum staffing rules, and based on this, whether ERAC's reversal of OEPA's decision was "supported by reliable, probative, and substantial evidence and [was] in accordance with law." R.C. 3745.06. Schrenk did not testify, and OEPA did not produce a witness who was present at all the facilities all day, every day, to directly verify staffing levels through personal observation. But as ERAC recognized, Schrenk was required to record his in and out times as a matter of rule and he unquestionably failed to do so. (ERAC Decision at ¶ 15-25; Hearing Tr. at 36-47; Hearing Exs. 7-10.) Barienbrock testified, and ERAC recognized, that OEPA relies on these logs to determine whether minimum staffing levels are met. (Hearing Tr. at 38-39; ERAC Decision at ¶ 24.) According to Evid.R. 803(7), even though this is indirect evidence and otherwise

unreliable hearsay that minimum staffing levels were not met, reliance on the logs based on the absence of an entry in regularly kept business records is permitted.

{¶ 25} ERAC's decision that OEPA's director "lacked a valid factual foundation for his conclusion" is in error. (ERAC Decision at ¶ 85.) ERAC did recognize the fact that there was a lack of time entries in regularly kept business records. But it construed that not to be admissible evidence. *Id.*; *see also* Evid.R. 803(7). It also construed such evidence to evince a complete lack of evidence. By our legal analysis, the lack of time entries in regularly kept business records was admissible, circumstantial evidence that is permissible proof of facts in both punitive and civil proceedings. *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 27; *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus. Even though the OEPA director may have lacked direct evidence that people (including Schrenk) failed to staff the sites for the minimum number of days and hours, the fact that the business records were incomplete provided circumstantial and reliable evidence that supported the OEPA director's factual findings. (ERAC Decision at ¶ 85.)

{¶ 26} OEPA's first assignment of error is sustained.

### C. Second Assignment of Error – Hearsay and the Content of the MORs

{¶ 27} On the topic of Schrenk's alleged failures to include full and correct information within the MORs, OEPA's director reached the following conclusions:

> 6. During the period from April 2, 2012, to March 14, 2013, Respondent was acting as an Operator of Record for the Lake Erie Utilities public water system. Monthly operating reports ("MOR's") kept during that period documented the performance of the public water system. Examination of the Lake Erie Utilities public water system MOR's reveals several omissions, including the failure to monitor the residual disinfectant concentration of the water entering the Lake Erie Utilities public water distribution system at least once every four hours that the plant was in operation on May 9, 2012.
>
> 7. The MORs also revealed that Respondent and his fellow operators of record failed to monitor for the temperature of disinfected water at the Lake Erie Utilities public water system on at least fourteen occasions in October 2012. Without a temperature measurement, neither Respondent, nor his fellow operators could determine the length of time chlorine needed to be in contact with the water so that the chlorine could properly disinfect the water. Without a temperature measurement, Ohio EPA could not verify whether potentially

harmful pathogens were being killed by the chlorine or whether harmful algal toxins such as microcystin were being properly treated by sufficient contact with chlorine, since the Lake Erie Utilities public water system receives its water from Lake Erie.

8. In May, June, July, and August, 2012, Respondent allowed the Lake Erie Utilities public water system plant to exceed the approved capacity of 115,000 gallons per day on at least fifteen separate occasions in October 2012, as well as the approved filtration capacity of 90 gallons per minute. Facilities such as the Lake Erie Utilities public water system are designed for a specific maximum flow rate above which there is a potential path for pathogens and algal toxins to pass through the process.

(OEPA Docket Item 2 at 2-3.)

{¶ 28} ERAC disagreed:

Regarding the Director's finding that Mr. Schrenk failed to include certain required information in MORs, however, the Commission finds that the Director acted unreasonably.

At the adjudication hearing, Mr. Barienbrock testified that two [Notices of Violation] NOVs indicated the Agency reviewed MORs submitted to Ohio EPA and determined that the Lake Erie Utilities [Public Water Supply] failed to record residual disinfectant concentration on May 9, 2012, and failed to record the temperature of disinfected water on 14 separate occasions in October 2012.

Significantly, however, based upon the testimony presented at the adjudication hearing, it is unclear to the Commission whether Mr. Barienbrock or another Ohio EPA staff member reviewed the MORs and prepared the NOVs. Further, the Certified Record does not include any testimony or other record of the Agency's underlying analysis of the MORs or the data contained therein.

Without any supporting testimony or other evidence, the Commission finds that the NOVs are merely the Agency's own, unsubstantiated assertions. Although the Commission must not substitute its judgment for that of the Director as to factual issues, the Director's conclusions must be supported by a valid factual foundation. *Ohio Fresh Eggs, LLC v. Wise*, 10th Dist. Franklin No. o7AP-780, 2008-Ohio-2423, ¶32.

Here, the Director presented only unsubstantiated assertions regarding the contents of various MORs. The testimony did not establish that Mr. Barienbrock had personal knowledge of the

contents of the MORs, nor were the MORs themselves introduced as exhibits. Instead, Mr. Barienbrock simply reviewed two NOVs and restated their conclusions. The Commission finds that such testimony is inadmissible hearsay and is therefore insufficient to support the truth of the matter asserted. Specifically, the NOVs are insufficient evidence to support the conclusion that the MORs, which were not otherwise included in the Certified Record or otherwise addressed in the testimony, lacked certain required information.

Accordingly, the Commission finds the Director acted unreasonably in concluding that Mr. Schrenk violated recordkeeping requirements with respect to the MORs he submitted to Ohio EPA.

* * *

Finally, regarding the finding that he operated the Lake Erie Utilities [Public Water Supply] above its approved capacity, Mr. Schrenk again argued that he could not be held legally responsible for those violations because his application to be added as an operator of record for that facility was ultimately rejected. Further, Mr. Schrenk argued that the NOVs presented at the adjudication hearing did not contain any underlying evidence to support the allegation that the plant operated above its approved capacity.

The Commission finds Mr. Schrenk's argument well-taken.

As discussed above, without supporting evidence, the NOVs presented at the adjudication hearing are merely the Agency's own, unsubstantiated assertions. The testimony at the adjudication hearing did not establish that Mr. Barienbrock had personal knowledge of the contents of the MORs, nor were the MORs themselves introduced as exhibits. Instead, Mr. Barienbrock simply reviewed two NOVs and restated their conclusions. Thus, Commission finds that such testimony is inadmissible hearsay and insufficient to support the truth of the matter asserted. Specifically, the NOVs are insufficient to support the conclusion that certain MORs, which were not otherwise included in the Certified Record or otherwise addressed in the testimony, contained information that led Ohio EPA to determine that the Lake Erie Utilities [Public Water Supply] operated above its approved capacity.

Accordingly, the Commission finds the Director acted unreasonably with respect to his conclusion that Mr. Schrenk

> violated Ohio's operator certification regulations by allowing the Lake Erie Utilities [Public Water Supply] to operate above its approved capacity.

(ERAC Decision at ¶ 98-107.)

{¶ 29} ERAC's criticism of the Notices of Violation is not without legal basis as OEPA used them to establish the content of the MORs to the effect that Schrenk had deficiently reported on operations and had run the plant above capacity. This hearsay problem troubled ERAC. OEPA argues that it was cured by the business records exception of Evid.R. 803(6). But Barienbrock did not testify that he ever saw the MORs or about his personal knowledge underlying the Notices of Violations.

{¶ 30} However, Schrenk did not object to any aspect of Barienbrock's testimony or to any exhibits until long after the hearing was over. *See, e.g.*, Hearing Tr. at 70. And ERAC "[was] confined to the record as certified to it by the director." R.C. 3745.05(A). Thus, it was not within ERAC's power to retroactively make and sustain an evidentiary objection on behalf of Schrenk in order to effectively remove evidence from the record as certified to it by the director. ERAC's retroactive exclusion of evidence was legal error, and thus, ERAC in addition failed to base its decision on substantial, reliable, and probative evidence.

{¶ 31} OEPA's second assignment of error is sustained.

## IV. CONCLUSION

{¶ 32} ERAC erred as a matter of law when it recognized that circumstantial evidence existed to show that minimum staffing levels were not met but conflated this to an entire lack of evidence since it was not direct evidence. ERAC also erred as a matter of law when it retroactively made and sustained an evidentiary objection in favor of Schrenk in order to effectively exclude evidence from the record before it as certified by the OEPA director. We sustain both assignments of error and reverse and remand this cause to ERAC for proceedings consistent with this decision.

*Judgment reversed, cause remanded.*

KLATT and LUPER SCHUSTER, JJ., concur.

––––––––––