[Cite as *Albany v. Butler*, 2018-Ohio-660.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The Village of Albany, Ohio, | : | |
| Appellant-Appellant, | : | No. 17AP-277 |
| | | (ERAC No. 16-6876) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Craig Butler, Director of the Environmental Protection Agency and Alexander Local School District, | : | |
| | : | |
| Appellees-Appellees. | : | |

D E C I S I O N

Rendered on February 22, 2018

**On brief:** *Lavelle and Associates*, and *Robert R. Rittenhouse*; *Robe Law Office*, and *Scott M. Robe*, for appellant. **Argued:** *Robert R. Rittenhouse*.

**On brief:** *Michael DeWine*, Attorney General, and *Nicole Candelora-Norman*, for appellee Craig Butler, Director of Environmental Protection Agency. **Argued:** *Nicole Candelora-Norman*.

**On brief:** *Bricker & Eckler LLP, Christopher L. McCloskey, Christine Rideout Schirra, Desmond J. Cullimore*, and *Tarik M. Kershah*, for appellee Alexander Local School District. **Argued:** *Desmond J. Cullimore*.

APPEAL from the Environmental Review Appeals Commission

DORRIAN, J.

{¶ 1} Appellant, the Village of Albany, Ohio ("Village"), appeals from an order of the Environmental Review Appeals Commission of Ohio ("ERAC") granting a motion to dismiss for lack of standing filed by appellee Alexander Local School District ("School District") in an appeal to ERAC from a permit-to-install ("PTI") issued by appellee Craig Butler, Director ("Director") of the Ohio Environmental Protection Agency ("OEPA"). For the reasons that follow, we affirm.

## I.  Facts and Procedural History

{¶ 2}  The Village is located in Athens County, Ohio; pursuant to an intergovernmental agreement between the Village and Athens County, the Village agreed to provide wastewater treatment service to an area defined as the Greater Albany Service Area, which included properties outside the Village's corporate limits.  The School District is located in part in Athens County, and a portion of the School District's property is located outside the corporate limits of the Village but within the Greater Albany Service Area.  In 2004, the Village enacted sewer use regulations providing, in relevant part, that no private sewage disposal system could be constructed in the area within the jurisdiction of the Village unless no public sanitary sewer was available.  The regulations further provided that if a public sanitary sewer became available to a property served by a private sewage disposal system, a connection would be made to the public sanitary sewer and the private sewage system would be abandoned.  Also in 2004, the School District undertook renovations at a facility on Ayers Road and, as part of the renovations, the Village and the School District entered into an agreement to extend public sewer lines and install a public sewer tap at that location.

{¶ 3}  In 2010, the Village enacted an ordinance providing that public sewer taps would not be provided outside the Village unless the property served by the tap was annexed into the Village.

{¶ 4}  In 2015, the School District began planning construction of a wellness center at its Ayers Road facility.  The School District submitted an initial PTI application to OEPA on August 12, 2015 indicating that the new wellness center would connect to the public sanitary sewer system.  The Village advised the School District and OEPA that it would not permit the School District to connect the wellness center to the public sanitary sewer unless the property was annexed into the Village.  The School District then filed an amended PTI application with OEPA on February 22, 2016, seeking to install an on-site sewage treatment system for the wellness center incorporating a septic tank and leach field.  On April 13, 2016, the Director granted the School District a PTI for the on-site sewage treatment system.

{¶ 5}  The Village filed a notice of appeal of the PTI with ERAC on May 12, 2016.  On November 14, 2016, the School District filed a motion to dismiss the appeal for lack of standing.  ERAC heard oral argument on the motion on February 15, 2017.  On March 22,

2017, ERAC issued a ruling granting the School District's motion to dismiss, based on its conclusion that the Village failed to establish that it was aggrieved or adversely affected by the Director's issuance of the PTI.

## II. Assignment of Error

{¶ 6}   The Village appeals and assigns the following single assignment of error for our review:

> The Environmental Review Appeals Commission erred in determined [sic] that the Appellant lacked standing in bringing its appeal.

## III. Discussion

{¶ 7}   The Village argues in its sole assignment of error that ERAC erred by finding it lacked standing to appeal the Director's issuance of the PTI.   In reviewing an appeal from an ERAC order, a court of appeals "shall affirm the order complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law."  R.C. 3745.06.

## A. Standing to appeal to ERAC

{¶ 8}   Standing is a threshold issue that must be resolved before an appeal to ERAC may proceed.  *Helms v. Koncelik*, 10th Dist. No. 08AP-323, 2008-Ohio-5073, ¶ 22, citing *New Boston Coke Corp. v. Tyler*, 32 Ohio St.3d 216, 217 (1987).  The challenger seeking to appeal to ERAC bears the burden of demonstrating that it has standing. *Olmstead Falls v. Jones*, 152 Ohio App.3d 282, 2003-Ohio-1512, ¶ 21 (10th Dist.).  R.C. Chapter 3745 provides two avenues of appeal to ERAC. First, pursuant to R.C. 3745.04(B) "[a]ny person who was a party to a proceeding before the director of environmental protection may participate in an appeal to [ERAC] for an order vacating or modifying the action of the director or a local board of health, or ordering the director or board of health to perform an act."  Second, pursuant to R.C. 3745.07, when the director of environmental protection acts without issuing a proposed action, "any person who would be aggrieved or adversely affected" by the director's action may appeal to ERAC.

{¶ 9}   This court has interpreted R.C. 3745.04(B) to hold that "the statutory language 'party to a proceeding before the director' encompassed 'any person affected by the proposed action who appears in person, or by his attorney, and presents his position, arguments, or contentions orally or in writing, or who offers or examines witnesses or

presents evidence tending to show that said proposed rule, amendment or rescission, if adopted or effectuated, will be unreasonable or unlawful.' " *Stark-Tuscarawas-Wayne Joint Solid Waste Mgt. Dist. v. Republic Waste Servs. of Ohio II, LLC*, 10th Dist. No. 07AP-599, 2009-Ohio-2143, ¶ 22, quoting *Cincinnati Gas & Elec. Co. v. Whitman*, 10th Dist. No. 74AP-151 (Nov. 19, 1974). Accordingly, we employ a two-part test to determine whether a person or entity is a party for purposes of R.C. 3745.04(B): (1) did the person or entity appear before the director and present arguments in writing or otherwise, and (2) was the person or entity affected by the action or proposed action. *Girard Bd. of Health v. Korleski*, 193 Ohio App.3d 309, 2011-Ohio-1385, ¶ 13 (10th Dist.).

{¶ 10} ERAC concluded the Village satisfied the first element of the two-part test because it expressed its position to OEPA in response to the School District's initial PTI application. That conclusion has not been challenged on appeal. Therefore, we will limit our analysis to whether ERAC erred by finding the Village failed to demonstrate that it was affected by the Director's order issuing the PTI.

{¶ 11} An order affects a person or entity if (1) it will cause injury in fact, economic or otherwise, and (2) the interest sought to be protected is within the realm of interests regulated or protected by the statute at issue. *Girard Bd. of Health* at ¶ 15. The person or entity must show that he or she will suffer a specific injury from the challenged action and that the injury is likely to be redressed if the challenged action is invalidated. *Id.* The alleged injury must be concrete, rather than abstract or suspected. *Id.* An alleged injury may be actual or threatened, but a person or entity alleging a threatened injury must demonstrate a realistic danger arising from the challenged action. *Republic Waste* at ¶ 24.[1]

{¶ 12} The Village asserts it was or will be injured in three ways by the Director's issuance of the PTI. First, the Village claims it suffered economic damages as a result of the PTI. Second, the Village claims it will be injured due to potential adverse environmental effects. Third, the Village claims it was injured by the PTI because it resulted in a violation of the Village's sewer use regulations. ERAC found each of these

---

[1] In *Republic Waste*, this court stated that it has "employed the same analysis in determining whether an appellant has been or will be 'affected' under R.C. 3745.04(B) or has been or will be 'aggrieved or adversely affected' under R.C. 3745.07." *Republic Waste* at ¶ 24. Thus, under either statutory section, our analysis of the Village's standing to appeal to ERAC would be the same.

alleged injuries insufficient to confer standing on the Village. We will consider ERAC's conclusion as to each alleged injury in turn.

## B. Lost revenue

{¶ 13} The Village asserts it suffered economic damage as a result of the issuance of the PTI because the School District disconnected an existing weight room facility from the Village's sewer system after receiving the PTI. The Village claims this resulted in less discharge into the Village's sewer system, which led to a loss of revenue for the Village. Citing this court's decision in *Johnson's Island Prop. Owners Assn. v. Schregardus*, 10th Dist. No. 96APH10-1330 (June 30, 1997), the Village argues that it was affected by issuance of the PTI as a result of this immediate economic damage.

{¶ 14} ERAC rejected the Village's lost revenue argument, concluding that, even if issuance of the PTI caused the Village to lose revenue, the type of lost revenue asserted by the Village was not within the realm of interests protected by the PTI program and would not be redressed if ERAC invalidated the PTI. ERAC concluded that Ohio Adm.Code Chapter 3745-42, under which the PTI was issued, was intended to assure the attainment or maintenance of water quality in Ohio. While acknowledging that Ohio Adm.Code 3745-42-04 permitted the Director to consider social or economic impacts in determining whether to grant a PTI, ERAC concluded that those social or economic impacts were limited to those resulting from water pollutants or other adverse environmental effects resulting from issuance of the PTI. ERAC also concluded that the Village's alleged lost revenue would not be redressed by an order vacating the PTI, because the School District could choose to abandon the wellness center project and existing weight room if the PTI was not granted.

{¶ 15} As noted, the Village cites this court's decision in *Johnson's Island* in support of its claim that economic damages may be sufficient to establish standing. Although the *Johnson's Island* decision recognizes that, under the first prong of the standing analysis, a person or entity must "demonstrate that the challenged action has caused or will cause him or her injury in fact, economic or otherwise," the facts of the case did not involve a claim of economic damages. In *Johnson's Island*, a property owners' association sought to appeal the issuance of PTI authorizing construction of a sanitary sewer system on Johnson's Island in Sandusky Bay. This court found that members of the

association expressed concerns about "(1) the possible breakage of an eight-inch pressurized line to be laid along the causeway leading to Johnson's Island, (2) the possibility of overflows and odors emanating from the pump stations and manholes created by the construction of the sewer system, (3) possible damage to a historic cemetery for Confederate officers caused by the construction of the sewer system, and (4) the effect the construction could have on the Lake Erie watersnake habitat, which is indigenous to the island." *Johnson's Island*. Members of the association also indicated that some of their homes had been shaken by blasting that was associated with construction of a portion of the sewer. Thus, none of the claimed injuries in *Johnson's Island* were based on economic damages and this court's finding that the association established that its members suffered injury in fact for purposes of standing analysis is not directly relevant to the School District's claim of lost revenue.

{¶ 16} The PTI at issue in this appeal was issued on April 13, 2016. At the time the PTI was issued, the Ohio Administrative Code provided that the Director was required to consider the following criteria in determining whether to issue a PTI:

> The director shall issue a permit to install or plan approval on the basis of the information appearing in the application or information gathered by or furnished to the Ohio environmental protection agency, or both, if he determines that the installation or modification and operation of the disposal system or land application of sludge will:
>
> (1) Not prevent or interfere with the attainment or maintenance of applicable water quality standards contained in Chapter 3745-1 of the Administrative Code;
>
> (2) Not result in a violation of any applicable laws; and
>
> (3) Employ the best available technology.

Former Ohio Adm.Code 3745-42-04(A), effective Oct. 17, 2003.[2] The water quality standards contained in Chapter 3745-1 of the Administrative Code are intended "to establish minimum water quality requirements for all surface waters of the state, thereby protecting public health and welfare; and to enhance, improve and maintain water quality as provided under the laws of the state of Ohio, section 6111.041 of the Revised Code, the federal Clean Water Act, and rules adopted thereunder." Ohio Adm.Code 3745-1-01(A).

---

[2] We note that Ohio Adm.Code 3745-42-04 has been amended, effective March 31, 2017, which was subsequent to issuance of the PTI and the ERAC decision at issue in the present appeal.

In light of these regulatory provisions, we cannot conclude that ERAC erred by finding that "the mere loss of revenue for a third-party public sewer system, *without any evidence of associated harm to water quality*" was not within the sphere of interests protected or regulated under the PTI process.  (Emphasis added.)  (Mar. 22, 2017 ERAC Order at ¶ 47.)

**C. Adverse environmental impact**

{¶ 17} The Village further argues it was injured by the PTI due to potential degradation of the water quality in the watershed located downstream from the School District's property.  The Village claims its sewer system utilizes the same stream and that further pollution of the stream would adversely affect the Village's discharge limitation.  In support of this argument, the Village cites an affidavit from Gary Silcott, professional engineer for the Village, in which Silcott averred that permitting an on-site sewage system under the PTI would result in a lower degree of sewage treatment and a greater burden to the discharge stream.

{¶ 18} ERAC rejected the Village's claim that it had standing based on the alleged potential adverse environmental impact resulting from installation of the on-site system under the PTI.  In its decision, ERAC noted that at oral argument the Village's counsel conceded the alleged adverse impact would only occur in the event of a failure or malfunction of the School District's on-site treatment system.  ERAC held that, absent evidence to the contrary, it must presume that a permit holder will comply with a permit.  ERAC noted that the Silcott affidavit did not assert there were any flaws in the design of the School District's system as authorized under the PTI, nor address the potential for failure or malfunction of that system.  Thus, ERAC held that Silcott's assertion regarding a lower degree of sewage treatment and increased burden on the discharge stream was an unsupported conclusory statement.  Finding the Village failed to present evidence that the School District would be unable to comply with the terms of the PTI, ERAC concluded the Village failed to establish that issuance of the PTI would result in injury to the Village through a negative impact on water quality within the Village or the Village's ability to operate its own sewage system.

{¶ 19} On appeal, the Village argues this court held in *Johnson's Island* that even if a threatened injury is slight and borders on overly speculative, it may support a conclusion that a person or entity has standing before ERAC.  As discussed above, however, the homeowners in *Johnson's Island* claimed several forms of injury or potential

injury. The court found that *some* of the alleged potential injuries bordered on overly speculative, but that the evidence, when viewed in its totality, supported a finding that the homeowners had suffered an injury in fact. *Johnson's Island*. In this case, by contrast, the Village only alleges one form of potential environmental impact, which it admitted before ERAC would only result if the School District's on-site sewage system malfunctioned. The Village failed to support the claim of potential injury with any evidence establishing the likelihood of such a malfunction. Thus, unlike in *Johnson's Island*, even when viewed in its totality, the Village's evidence regarding adverse environmental effects failed to establish that it was likely to suffer an injury in fact as a result of issuance of the PTI. Based on the evidence presented to ERAC related to the possible adverse environmental impact, we cannot conclude ERAC erred by finding the Village failed to establish it suffered or would suffer an injury in fact sufficient to confer standing to challenge the issuance of the PTI.

## D. Violation of sewer use regulations

{¶ 20} Finally, the Village asserts it suffered injury because the PTI resulted in a violation of its sewer use regulations. Specifically, the Village asserts that if the School District constructs an on-site sewage system it will result in a violation of a provision of the Village's regulations prohibiting construction of a private on-site sewage system when a property is already being served by the public sewer system and requiring that a property owner must connect to the public sewer system when it is available to that property. The Village claims the PTI results in "erosion of the respect and enforcement of [the] Village's local laws" that "jeopardizes the Village's continued ability to operate its public sewer system." (Appellant's Brief at 21.)

{¶ 21} ERAC rejected this argument, finding the Village failed to present any evidence demonstrating that the Director's issuance of the PTI prevented the Village from enforcing its ordinances through the courts or other venues. ERAC further concluded the PTI was based on the Director's conclusion that the proposed on-site sewage system complied with water pollution control laws, but did not relieve the School District from complying with local laws and regulations.

{¶ 22} In *Olmstead Falls*, the city of Olmstead Falls sought to appeal a decision by OEPA to waive its authority to act on a request for certification under the federal Clean Water Act related to a permit to discharge materials into United States waters during an

expansion project at the Cleveland Hopkins International Airport.  *Olmstead Falls* at ¶ 2. Considering the issue of standing on appeal, this court concluded that Olmstead Falls failed to demonstrate how it would be injured by the discharges allowed under the permit. The court noted that Olmstead Falls was located 2.2 miles from the airport, but concluded that "being a city within close proximity of the airport is not a concrete or specific injury as required to demonstrate standing."  *Id.* at ¶ 29.  Olmstead Falls claimed it was affected by OEPA's waiver because, as a city, it had responsibility for providing for public health and safety, but the court rejected that argument, holding that "merely being a city does not confer standing without demonstrating the adverse impact or injury resulting from [OEPA's waiver]."  *Id.* at ¶ 30.

{¶ 23}  In the present case, the Village's argument that the PTI erodes respect for its local regulations is analogous to the city of Olmstead Falls' claim that it had standing based on its responsibility to provide for public health.  The fact that the Village has authority to enact local sewer use regulations and an interest in ensuring that those regulations are followed is not sufficient to confer standing to challenge the PTI, absent a showing of specific injury.  Moreover, with respect to the Village's argument that the PTI authorizes the School District to violate the local sewer use regulations, the PTI expressly provides that "[i]ssuance of this permit does not relieve you of the duty of complying with all applicable federal, state, and local laws, ordinances, and regulations."  (Apr. 13, 2016 OEPA, Application No. 1082296, Permit to Install at 2.)  Accordingly, we cannot conclude ERAC erred by finding the Village failed to demonstrate it suffered injury from the issuance of the PTI by preventing the Village from enforcing its sewer use regulations.

## IV.  Conclusion

{¶ 24}  For the foregoing reasons, we overrule the Village's sole assignment of error and affirm the order of the Environmental Review Appeals Commission.

*Order affirmed.*

BROWN, P.J., and TYACK, J., concur.

_____