[Cite as *Neighbors Opposing Pit Expansion, Inc. v. Stevenson*, 2025-Ohio-2237.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Neighbors Opposing Pit Expansion, Inc., :

      Appellant-Appellant/ :
      Cross-Appellee,                No. 24AP-93
                                     (ERAC No. 21-7114)
                            :
v.
                            :       (REGULAR CALENDAR)
Laurie A. Stevenson, Director Ohio
Environmental Protection Agency et al., :

      Appellee-Appellee, :

Commercial Liability Partners, LLC et al., :

      Appellees-Appellees/ :
      Cross-Appellants.

                            :

D E C I S I O N

Rendered on June 26, 2025

**On brief**: *AltmanNewman Co. LPA, Justin D. Newman, D. David Altman, Amy J. Leonard*, and *Robin A. Burgess*, for Neighbors Opposing Pit Expansion, Inc. **Argued**: *Justin D. Newman* and *D. David Altman*.

**On brief**: *Dave Yost*, Attorney General, *Amber Wootton Hertlein*, and *Nora M. Baty*, for Director Stevenson. **Argued**: *Nora M. Baty*.

**On brief**: *McMahon DeGulis LLP, Gregory J. DeGulis*, and *Megan E. Goedeker*; *David Michalski* for Commercial Liability Partners, LLC and New Richmond Development Corporation, LLC. **Argued**: *Gregory J. DeGulis*.

APPEAL from the Environmental Review Appeals Commission

EDELSTEIN, J.

{¶ 1} Appellant/cross-appellee, Neighbors Opposing Pit Expansion, Inc. ("NOPE"), appeals from an order of the Environmental Review Appeals Commission ("the commission") affirming an action of the Director of the Ohio Environmental Protection Agency (the "director" or "OEPA"), issuing a permit-to-install ("PTI") to appellees/cross-appellants, Commercial Liability Partners, LLC ("CLP") and New Richmond Development Corporation, LLC ("NRDC"). For the reasons that follow, we reverse.

## I.  Facts and Procedural History

{¶ 2}  On January 15, 2021, NRDC sent an application to OEPA requesting a PTI to close Ash Pond B at the former Walter C. Beckjord Generating Station ("Beckjord") in Clermont County, Ohio. Beckjord began operation as a coal fired electric power generating station in 1952 and ceased operation in 2014. CLP acquired Beckjord in 2018 and created NRDC for the purpose of decommissioning the facility and redeveloping the land for future use. NRDC is a wholly owned subsidiary of CLP (jointly referred to herein as "CLP/NRDC").

{¶ 3}  Beckjord has four ash ponds: Pond A, Pond B, Pond C, and Pond C Extension. When Beckjord was actively generating electricity, the ash ponds served as surface impoundments for coal combustion residuals ("CCR"). CCR includes material such as fly ash, bottom ash, broiler slag, and flue gas sulphurisation materials. Pond B is approximately 18 acres in size and located roughly 700 feet from the Ohio River. Pond B was originally created from the larger Pond A through construction of a splitter dike. After Beckjord ceased generating power, Pond B continued to receive "leachate from coal ash land disposal units" located uphill from the pond on Beckjord Road.[1]  (OEPA Ex. 1 at 8.) OEPA previously issued CLP/NRDC PTIs to close Ponds C and C Extension. CLP/NRDC's January 15, 2021 application concerned only the closure of Pond B.

{¶ 4}  In its application, CLP/NRDC proposed the following sequence of construction for the closure of Pond B: reroute the leachate flow from the uphill ash piles to National Pollutant Discharge Elimination System outfall 002; dewater Pond B; construct a buttress on the northern portion of Pond B; remove CCR comprising the splitter dike; reconstruct the splitter dike; regrade Pond B; construct Pond B final cover system; and place vegetative cover soil and mulch disturbed areas. Glen Vonderembse, an

---

[1] Leachate is liquid that has come in contact with coal ash. (Jan. 10, 2024 Decision at 4.)

Environmental Engineer in OEPA's Division of Surface Water, reviewed CLP/NRDC's application for the PTI to close Pond B. On June 3, 2021, Mr. Vonderembse sent CLP/NRDC an email containing his comments and suggested revisions to the closure plan. In July 2021, CLP/NRDC responded to Mr. Vonderembse's comments and revised its proposed sequence of construction for the closure.

{¶ 5} On September 3, 2021, the director issued CLP/NRDC a PTI to close Pond B (the "Pond B PTI"). The Pond B PTI provided for the "clos[ure], in-place, [of] Ash Pond 'B' " by "dewatering the ash pond, regarding the in-place ash, placement of a low permeability soil cover system, reconstruction of an upper portion of an embankment, placement of buttress fill along a segment of the east embankment and long term care of the closed facility." (OEPA Ex. 1 at 5.) On September 13, 2021, OEPA issued a public notice of the Pond B PTI.

{¶ 6} On October 13, 2021, NOPE appealed the Pond B PTI to the commission. NOPE is a non-profit organization consisting of members who reside and own property near Beckjord. NOPE raised 16 assignments of error in its notice of appeal, generally asserting the director acted unreasonably or unlawfully by issuing the Pond B PTI.

{¶ 7} On January 13, 2022, CLP/NRDC filed a motion to dismiss the appeal. CLP/NRDC argued R.C. 3745.07 governed NOPE's ability to appeal the Pond B PTI and required NOPE to file its notice of appeal within 30 days of the director's September 3, 2021 issuance of the PTI. As such, CLP/NRDC claimed the commission lacked jurisdiction to hear the appeal because NOPE's October 13, 2021 notice of appeal was untimely. CLP/NRDC also asserted NOPE could not appeal the Pond B PTI pursuant to R.C. 3745.04, because NOPE was not a party to the proceeding before the director for the Pond B PTI.

{¶ 8} On January 27, 2022, NOPE filed a response to CLP/NRDC's motion to dismiss. NOPE argued it was a party to the proceeding before the director and had timely appealed the Pond B PTI pursuant to R.C. 3745.04. On February 16, 2022, the commission denied CLP/NRDC's motion to dismiss the appeal without analysis.

{¶ 9} The commission held a de novo hearing on the matter on May 22, 23, and 24, 2023. At the hearing, CLP/NRDC reiterated its argument that NOPE lacked standing to appeal the Pond B PTI. At the hearing, NOPE presented testimony from four individuals: Mr. Vonderembse; Allison Reed, a geologist at OEPA who assisted Mr. Vonderembse in his

review of the Pond B PTI application; Lindsay Taliaferro, III, a manager at OEPA; and Steve Utter, a NOPE board member.

{¶ 10} On January 10, 2024, the commission issued a decision finding NOPE had standing to appeal the Pond B PTI but further finding NOPE's various assignments of error lacked merit. The commission noted NOPE's October 13, 2021 notice of appeal was timely under R.C. 3745.04, but was not timely under R.C. 3745.07. Because R.C. 3745.04 applies to entities who were parties to the proceeding before the director, the commission noted it needed to resolve "whether NOPE participated in the proceeding before the Director." (Jan. 10, 2024 Decision at 33.) NOPE presented the commission with two documents to establish it was a party to the proceeding before the director: (1) a letter dated May 26, 2021 that NOPE sent to CLP/NRDC informing those entities of NOPE's intent to file suit against them under federal law; and (2) a series of emails between NOPE's attorney and OEPA's attorney from March 2021 through January 2022. The commission concluded that, while "neither of the documents . . . expressly 'object'[ed] to the Agency's issuance of the [Pond B] PTI, the totality of the circumstances establishe[d] that NOPE generally opposed CLP's proposed closure of Pond B." (Jan. 10, 2024 Decision at 33.) The commission also found NOPE alleged "sufficiently specific [injuries] to meet the threshold required to establish standing." (Jan. 10, 2024 Decision at 33.) As such, the commission found NOPE had standing to appeal the Pond B PTI and had timely filed its notice of appeal under R.C. 3745.04.

{¶ 11} The commission then reviewed NOPE's assignments of error and found the director's issuance of the Pond B PTI both lawful and reasonable. As such, the commission affirmed the director's issuance of the Pond B PTI.

## II. Assignments of Error

{¶ 12} NOPE appeals, raising the following four assignments of error for our review:

> [I.] ERAC's decision is not in accordance with law or supported by reliable, probative, and substantial evidence where the decision allows the Director to issue a permit for the coal ash waste pond known as "Pond B" under R.C. 6111.45 without evidence that the coal ash waste in Pond B is nontoxic and therefore eligible for permitting as an exempt waste.
>
> [II.] ERAC's decision is not in accordance with law or supported by reliable, probative, and substantial evidence

where it fails to require the Director to ensure the environmental permit holder will employ the Best Available Technology (BAT) to pre vent groundwater contamination, as required by Ohio Adm. Code 3745-42-04(A)(2)(a)(iii).

[III.] ERAC's decision is not in accordance with law or supported by reliable, probative, and substantial evidence where the decision affirms the Director's granting of a permit that will result in the continued pollution of groundwater from Pond B by, *inter alia*, ignoring and failing to require technology and other measures to address the fact that up to 10 feet of coal ash waste is in direct contact with groundwater.

[IV.] ERAC's decision is contrary to law and not supported by reliable, probative, and substantial evidence where the decision: (A) contrary to this Court's precedent, places the burden on NOPE to prove the permit's issuance was unreasonable and unlawful; and (B) ignores that cross-examination is the fundamental engine for the discovery of truth in the adversarial process.

{¶ 13} CLP/NRDC cross-appeals, raising the following two assignments of error for our review:

[I.] The Environmental Review Appeals Commission erred when it found that Appellant Neighbors Opposing Pit Expansion (NOPE) had standing to bring the appeal.

[II.] The Environmental Review Appeals Commission erred when it found that Appellant NOPE filed its appeal within the appropriate statute of limitations.

## III. Cross-Appeal – Standing and Statute of Limitations

{¶ 14} Because CLP/NRDC's cross-appeal concerns the commission's jurisdiction to address NOPE's appeal, we address the cross-appeal first. In its first cross-assignment of error, CLP/NRDC asserts the commission erred by finding NOPE had standing to appeal the director's issuance of the Pond B PTI. In its second cross-assignment of error, CLP/NRDC asserts the commission erred by finding NOPE timely filed its appeal within the applicable statute of limitations. Because these assignments of error are related, we address them jointly.

{¶ 15} The commission is required to affirm the director's action "[i]f, upon completion of the hearing, the commission finds that the action appealed from was lawful

and reasonable." R.C. 3745.05(F). *See Citizens Commt. to Preserve Lake Logan v. Williams*, 56 Ohio App.2d 61, 70 (10th Dist. 1977), paragraph two of the syllabus (noting the commission "does not stand in the place of the Director . . . and may not substitute its judgment for that of the Director, but may consider only whether his actions were unreasonable or unlawful"). This court must affirm the commission's order if we find, "upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 3745.06. In the absence of such a finding, we must "reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 3745.06. *See Tube City Olympic of Ohio, Inc. v. Jones*, 2004-Ohio-1464, ¶ 25 (10th Dist.), citing *Perrysburg v. Schregardus*, 2001-Ohio-4085 (10th Dist.) (defining reliable, probative, and substantial evidence).

{¶ 16} "Standing relates to a party's right to make a legal claim or seek judicial enforcement of a legal duty or right." *Albanese v. Batman*, 2016-Ohio-5814, ¶ 24, citing *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 27. Generally, a party's lack of standing concerns only "the capacity of [the] party to bring [the] action, not the subject matter jurisdiction of the court." *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 77 (1998), citing *State ex rel. Smith v. Smith*, 75 Ohio St.3d 418, 420 (1996). In administrative appeals, however, "standing is a jurisdictional issue." *Alexis Entertainment, L.L.C. v. Toledo*, 2013-Ohio-3946, ¶ 7 (6th Dist.) citing *Jones* at fn. 4. *See Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 177 (2001) (explaining a party's "right to appeal an administrative decision is neither inherent nor inalienable; to the contrary, it must be conferred by statute"); *Willoughby Hills v. C.C. Bar's Sahara, Inc.*, 64 Ohio St.3d 24, 26 (1992) (stating that in the "absence of constitutional or statutory authority, the aggrieved party may not seek appellate review of the order of an administrative determination"); *Skye Metals Recovery, Inc. v. Nally*, 2013-Ohio-1522, ¶ 6 (10th Dist.) (noting "[a]dministrative tribunals possess jurisdiction limited by their statutory or regulatory grant").

{¶ 17} Accordingly, "[s]tanding is a threshold jurisdiction[al] issue that must be resolved before an appellant may proceed with an appeal to [the commission]." *Helms v.*

*Koncelik*, 2008-Ohio-5073, ¶ 22 (10th Dist.), citing *New Boston Coke Corp. v. Tyler*, 32 Ohio St.3d 216, 217 (1987). "The challenger seeking to appeal to [the commission] bears the burden of demonstrating that it has standing." *Albany v. Butler*, 2018-Ohio-660, ¶ 8 (10th Dist.), citing *Olmsted Falls v. Jones*, 2003-Ohio-1512, ¶ 21 (10th Dist.). Whether a party established standing to bring an action is a question of law that we review de novo. *Moore v. Middletown*, 2012-Ohio-3897, ¶ 20, citing *Cuyahoga Cty. Bd. of Commrs. v. State*, 2006-Ohio-6499, ¶ 23.

{¶ 18} R.C. Chapter 3745 provides two avenues for appeal to the commission: R.C. 3745.04 and 3745.07. *Albany* at ¶ 8. R.C. 3745.04(B) provides that "[a]ny person who was a party to a proceeding before the director of environmental protection may participate in an appeal to the environmental review appeals commission for an order vacating or modifying the action of the director." R.C. 3745.04 requires the appellant to file their notice of appeal "within thirty days after notice of the action." R.C. 3745.04(D).

{¶ 19} R.C. 3745.07 generally addresses the director's ability to issue a proposed action. The statute provides that, before issuing or denying any permit or license under R.C. Chapters 3704, 3714, 3734, or 6111, the director "may issue a proposed action to the applicant that indicates the director's intent with regard to the issuance [or] denial." The director must maintain a "mailing list of persons who, annually, subscribe for notification of all proposed actions" and must "mail notice to each subscriber of a proposed action." R.C. 3745.07. If a person objects to a proposed action, the director must "conduct an adjudication hearing on the proposed action." R.C. 3745.07. Finally, the statute provides that if the director issues or denies a permit "without issuing a proposed action, . . . any person who would be aggrieved or adversely affected thereby, may appeal to the [commission] within thirty days of the issuance [or] denial." R.C. 3745.07.

{¶ 20} Thus, unlike R.C. 3745.04, the appeal provision in R.C. 3745.07 does not "requir[e] participation in a proceeding before the Director." *D'Andrea v. Butler*, 2018 Ohio ENV LEXIS 4, *6 (ERAC May 16, 2018). However, the 30-day appeal period under R.C. 3745.07 begins upon the director's issuance or denial of a permit, whereas the 30-day appeal period under R.C. 3745.04 begins upon the date of public notice. *Id.*

{¶ 21} R.C. 3745.07 also expressly applies to situations where the director acts without first issuing a proposed action. *See Martin v. Schregardus*, 1996 Ohio App. LEXIS

4288, *4 (10th Dist. Sept. 30, 1996) (noting "R.C. 3745.07 specifically addresses th[e] situation where the director issue[s] a permit without issuing a proposed action"); *Stark-Tuscarawas-Wayne Joint Solid Waste Mgt. Dist. v. Republic Waste Servs. of Ohio II, L.L.C.*, 2009-Ohio-2143, ¶ 23 (10th Dist.) (noting R.C. 3745.07 "authorizes appeals . . . where the Director acts without issuing a proposed action"); *Jackson Cty. Environmental Commt. v. Shank*, 67 Ohio App.3d 635, 638 (10th Dist. 1990) (stating R.C. 3745.07 applies "if the director's action was done without issuing a proposed action"). *Compare Osnaburg Twp. Bd. of Trustees v. Bd. of Health of the Stark Cty. Combined Gen. Health Dist.*, 2010 Ohio ENV LEXIS 1, *14 (ERAC Jan. 6, 2010) (finding "no appeal right available [to the party] under R.C. 3745.07," because the director's action "was preceded by a proposed action"). Adm.Code 3745-47-02(P)(3) defines a "[p]roposed action" as "a written statement that gives the director's intention with respect to an action and allows persons to do one or more of the following: (a) File comments or objections to the action. (b) Request an adjudication hearing in accordance with this chapter. (c) Request a public meeting regarding the action."

{¶ 22} In *Gen. Motors v. McAvoy*, 63 Ohio St.2d 232 (1980), the Supreme Court of Ohio explained the appeal provision of R.C. 3745.07 "was enacted as an amendment to the statute and was intended to provide an opportunity for all interested parties to be heard." *Id.* at 238, citing Am.Sub. S.B. No. 288. Thus, while the right to appeal under R.C. 3745.04 is "limited to '[a]ny person who was a party to a proceeding before the director,' " R.C. 3745.07 "allows an appeal by indirectly affected parties, such as governmental representatives, and public interest and environmental groups." *Id.* at 238, quoting R.C. 3745.04. *See also Rings v. Nichols*, 13 Ohio App.3d 257, 259 (10th Dist. 1983) (noting when an entity is "not [an] applicant[], but [an] interested nonpart[y], their hearing rights are expressly provided for in R.C. 3745.07").

{¶ 23} OEPA's September 13, 2021 public notice of the Pond B PTI stated the "final action [was] not preceded by proposed action and [was] appealable to [the commission]." (OEPA Ex. 4 at 2.) At the de novo hearing, Mr. Vonderembse explained that neither a public hearing nor a public comment period was held for the Pond B PTI because "[t]ypically, public hearings [were] not required or conducted for PTIs" and "public comment periods are not posted for PTIs." (ERAC De Novo Tr. at 420.) Thus, because the director's issuance

of the Pond B PTI was not preceded by a proposed action, R.C. 3745.07 set forth NOPE's appeal rights. Pursuant to R.C. 3745.07, NOPE had to file its notice of appeal within 30 days of the director's September 3, 2021 issuance of the Pond B PTI, i.e., by October 3, 2021.

{¶ 24} Notably, although NOPE filed its notice of appeal with the commission beyond the R.C. 3745.07 30-day deadline, the record demonstrates NOPE *could* have timely filed its notice of appeal under R.C. 3745.07. While R.C. 3745.04(D) expressly requires the appellant to "set forth the action complained of and the grounds upon which the appeal is based" in their notice of appeal, R.C. 3745.07 does not contain a similar requirement. *See Johnson's Island Property Owners' Assn. v. Schregardus*, 1997 Ohio App. LEXIS 2839, *10 (10th Dist. June 30, 1997). However, Adm.Code 3746-5-04, which amplifies both R.C. 3745.04 and 3745.07, states a notice of appeal filed with the commission must "include, or be accompanied by, a copy of the action being appealed" and must contain "the assignments of error to be presented for review." Adm.Code 3746-5-04(A) and (B). *See Arndt v. P & M LTD*, 2008-Ohio-2316, ¶ 40 (11th Dist.), quoting Ohio Legislative Service Commission's Rule Drafting Manual (4th Ed. 2006) at 19 (explaining the "[r]ule [a]mplifies" line of an Ohio Administrative Code provision identifies " 'the Revised Code section(s) that the rule expands upon, further details, or clarifies' "). Thus, the administrative code arguably required NOPE's R.C. 3745.07 notice of appeal to include a copy of the Pond B PTI and set forth NOPE's assignments of error.

{¶ 25} In its notice of appeal to the commission, NOPE admitted it received the "Permit, 'plans,' and deficient and incomplete application" for the Pond B PTI on "October 1, 2021." (ERAC Item A, at 2.) Thus, the record demonstrates NOPE had a copy of the Pond B PTI by October 1, 2021, and could have filed a complete notice of appeal under R.C. 3745.07 by October 3, 2021.

{¶ 26} Additionally, the administrative code provides an avenue for a party to amend a timely filed notice of appeal. Adm.Code 3746-5-06(A) states that, "[u]pon motion by appellant, the commission may allow the amendment of an appeal." The commission may also "order the filing of an amended notice of appeal." Adm.Code 3746-5-06(B). *See Schrenk v. Butler*, 2017-Ohio-8745, ¶ 13 (10th Dist.) (noting the commission construed a party's "letter declaring his intention to appeal" as a "notice of appeal" and ordered the party "to file and properly serve an amended notice of appeal"). In *Johnson's Island*

*Property Owners' Assn.*, we determined that "filing an original notice of appeal [with the commission] within the thirty-day time limit will preserve a party's right to appeal, and permit that party to file a subsequent motion to amend its notice of appeal." *Id.* at *12. *Accord Franklin Cty. Regional Solid Waste Mgt. Auth. v. Schregardus*, 84 Ohio App.3d 591, 598 (10th Dist. 1992) (holding an amended notice of appeal could cure a defective, but timely filed, original notice of appeal so long as the "appellee was not unfairly prejudiced by the amendment to the notice of appeal").

{¶ 27} In its notice of appeal to the commission, NOPE acknowledged OEPA issued the public notice of the Pond B PTI on September 13, 2021, and stated that "[t]he next day, NOPE asked the Ohio EPA in writing for full information about the action." (ERAC Item A at 2.) Thus, the record demonstrates NOPE was aware of the public notice of the Pond B PTI by at least September 14, 2021. The public notice indicated the action date was September 3, 2021, identified the notice type as a final issuance of a PTI, and described the project as "Closure Plan-Ash Pond B-Former Walter C Beckjord Station." (OEPA Ex. 4 at 2.) Accordingly, NOPE could have filed a timely notice of appeal regarding the Pond B PTI after it became aware of the public notice, and subsequently moved to amend its notice of appeal when it received a copy of the Pond B PTI from OEPA. Notably, in its October 13, 2021 notice of appeal, NOPE stated it "reserve[d] its right to amend th[e] Notice of Appeal and supplement the issues raised in light of information contained in the certified record or discovered in the course of the proceedings." (ERAC Item A at 4.) This statement demonstrates NOPE understood it could amend its notice of appeal.

{¶ 28} NOPE filed its notice of appeal with the commission on October 13, 2021, outside of the 30-day deadline provided for in R.C. 3745.07. Because the "statutorily established 30-day deadline is a mandatory condition precedent to the commission's authority to hear an appeal," the commission did not have jurisdiction to entertain NOPE's appeal under R.C. 3745.07. *Skye Metals Recovery, Inc.*, 2013-Ohio-1522, at ¶ 6 (10th Dist.).

{¶ 29} With respect to R.C. 3745.04, we are unable to agree with the commission's conclusion that NOPE was a "party to a proceeding before the director" for purposes of R.C. 3745.04(B). This court employs a two-part test to determine whether a person was a party to the proceeding under R.C. 3745.04: "[f]irst, did the person appear before the director,

presenting his arguments in writing or otherwise; and, second, was the person 'affected' by the action or proposed action."[2] *Martin*, 1996 Ohio App. LEXIS 4288, at *3. *Accord Girard Bd. of Health v. Korleski*, 2011-Ohio-1385, ¶ 13 (10th Dist.).  A person appears before the director if the person appears " 'in person, or by his attorney, and presents his position, arguments, or contentions orally or in writing, or who offers or examines witnesses or presents evidence tending to show that said proposed [action], if adopted or effectuated, will be unreasonable or unlawful.' " *Stark-Tuscarawas-Wayne Joint Solid Waste Mgt. Dist.*, 2009-Ohio-2143, at ¶ 22 (10th Dist.), quoting *Cincinnati Gas & Elec. Co. v. Whitman*, 1974 Ohio App. LEXIS 3290, *17 (10th Dist. Nov. 19, 1974).

{¶ 30} Thus, an "entity which fails to appear, submit evidence or otherwise participate in a . . . proceeding conducted by the Director of Environmental Protection lacks standing to challenge administrative [action] resulting therefrom in an appeal to the [commission] pursuant to R.C. 3745.04." *New Boston Coke Corp.*, 32 Ohio St.3d at paragraph one of the syllabus. In *New Boston Coke Corp.*, the court found the "unmistakable import" of R.C. 3745.04 was to confine the commission's review "to those entities which actually appeared in the [administrative] proceeding before the director" and to "promote administrative and judicial economy" by "assur[ing] that any objection interposed with regard to agency [action] be considered *ab initio* by the authority responsible for [issuing the action]." *Id*. at 218.

{¶ 31} When the director holds a public hearing regarding a proposed action, a person may "appear" before the director for purposes of R.C. 3745.04 by attending the hearing and informing the director of the person's position on the proposed action. *See Cincinnati Gas & Elec. Co.*, at *17 (finding the appellants were parties to a proceeding before the director for purposes of R.C. 3745.04, because the director held "public hearings after notice, and certain persons, including the appellants herein, attended such meetings and voiced their approval or opposition to the enactment of such regulations"); *Martin* at *2

---

[2] In determining whether a person has been "affected" under R.C. 3745.04(B), or whether a person has been "aggrieved or adversely affected" under R.C. 3745.07, this court employs the same analysis. *Stark-Tuscarawas-Wayne Joint Solid Waste Mgt. Dist.*, 2009-Ohio-2143, at ¶ 24 (10th Dist.). "Under either section, the appellant bears the burden of demonstrating that it has standing." *Id*. To establish standing, a party must demonstrate the challenged action "has caused or will cause him or her injury in fact, economic or otherwise, and that the interest sought to be protected is within the sphere of interests protected or regulated by the statute in question." *Johnson's Island Property Owners' Assn.*, 1997 Ohio App. LEXIS 2839, at *7, citing *Franklin Cty. Regional Solid Waste Mgt. Auth.*, 84 Ohio App.3d at 599.

(assuming the appellant appeared before the director for purposes of R.C. 3745.04 because the appellant "submitted written letters/comments to the director and attended public hearings on the issuance of the PTI"); *New Boston Coke Corp.* at 218 (finding the corporation "failed to meet the criteria of a party as prescribed by R.C. 3745.04," because the corporation "neither appeared in person nor through counsel in the hearing conducted by the director").

{¶ 32} A person may also appear before the director through methods other than attending a public hearing. In *Albany* for instance, in response to a school district's application for a PTI to build a wellness center and connect the wellness center to the public sanitary sewer system, the appellant/village "advised the School District and OEPA that it would not permit the School District to connect the wellness center to the public sanitary sewer unless the property was annexed into the Village." *Albany*, 2018-Ohio-660, at ¶ 4 (10th Dist.). The commission found the appellant/village "satisfied the first element of the" R.C. 3745.04(B) test, "because it expressed its position to OEPA in response to the School District's initial PTI application." *Id.* at ¶ 10. *See also D'Andrea*, 2018 Ohio ENV LEXIS 4, at *2, 10-11 (finding the appellant was a party to the proceeding for purposes of R.C. 3745.04(B) because, shortly after the appellant's neighbor applied for a PTI to install a sewage holding tank on its property, the appellant "sent an email to [the] Ohio EPA" articulating "her opposition to [her neighbor's] proposed installation of a sewage holding tank").

{¶ 33} In *Osnaburg Twp. Bd. of Trustees*, the commission found the Osnaburg Township Board of Trustees ("township") was a party to a proceeding before the Stark County Board of Health for purposes of R.C. 3745.04(B). The record demonstrated that, after a company filed an application with the Board of Health seeking a license to expand its construction and demolition debris facility, the township passed a resolution stating it "[o]ppose[d] the [company's] current license application," "strongly resist[ed] any type of expansion beyond the existing twenty (20) acre footprint," and "[c]all[ed] upon the Stark County Board of Health to deny the current license application." *Osnaburg Twp. Bd. of Trustees*, 2010 Ohio ENV LEXIS 1, at *6. The township also "request[ed] and attend[ed] meetings with personnel from the Stark County Health Department" to address the proposed expansion of the debris facility. *Id.* at *18. The commission found the township

appeared in the action because it had been "exceedingly proactive in making the Stark County Health Department aware of [its] various concerns regarding [the company's] proposed modification." *Id.*

{¶ 34} Thus, a party may appear before the director through methods other than providing comments at a public hearing.  However, the party's communication with the director must inform the director of the party's position on the specific action under consideration, whether the communication expresses the party's approval, objection, qualified objections, or various concerns.  NOPE relied on a May 26, 2021 notice of intent to sue letter and a series of emails from March 2021 through January 2022 to support its contention that it was a party to the proceeding before the director for the Pond B PTI.  The notice of intent to sue letter informed CLP/NRDC of NOPE's intent to file suit under the federal Resource Conservation and Recovery Act ("RCRA"). Although the letter was addressed to CLP/NRDC, NOPE provided copies of the letter to various governmental entities, including the director of OEPA.

{¶ 35} In the notice of intent to sue letter, NOPE informed CLP/NRDC that its handling, management, and disposal of CCR at Beckjord violated the RCRA's prohibitions against open dumping.  NOPE explained that unlined coal ash disposal ponds, "such as those at the Beckjord Property, present a 'significant risk of harmful leakage' and that such 'leakages pose substantial risks to humans and the environment.' " (NOPE Ex. 42 at 3, quoting *Util. Solid Waste Activities Group v. EPA*, 901 F.3d 414, 422-23, 432-33 (D.C.Cir. 2018).)  NOPE claimed the four unlined ponds at Beckjord contained "over 5 million tons of Coal Ash" and were "unable to contain their contents, thereby continuing to contaminate the groundwater and soils beneath and around the Ponds." (NOPE Ex. 42 at 5, 6.)  As such, NOPE claimed CLP/NRDC violated the RCRA's prohibitions against open dumping because the "unlined Ponds leak Coal Ash constituents into the native soil under and surrounding the Ponds and into the environment." (NOPE Ex. 42 at 16.)  NOPE also stated that, while CLP/NRDC "represented to the public that they are conducting 'closure' activities" at Beckjord, CLP/NRDC was "not following the closure and post-closure requirements mandated by RCRA and federal regulations."  (NOPE Ex. 42 at 14.)

{¶ 36} Thus, the notice of intent to sue letter generally informed the director of NOPE's objection to the unlined nature of the ponds at Beckjord.  However, NOPE's general

objection to the unlined nature of the ponds did not present the director with NOPE's concerns regarding CLP/NRDC's proposed closure plan for Pond B. Two of the main aspects of the Pond B closure plan involved dewatering the pond and placing an impermeable cap over the pond. Mr. Vonderembse explained that dewatering would "reduce liquefaction" and allow for "settlement of the final waste mass," which would help to maintain "certain grades on top of the closed pile configuration so that any rainwater falling on top of the closed pile can still run off." (ERAC De Novo Tr. at 437, 435.) Ms. Reed explained that placing a cap over the dewatered pond would "provide a cover or a barrier that's impermeable to surface water infiltration" which would "allow[] surface water to run off. So you don't get [water] infiltrat[ing] through the waste material, and so it's -- it helps protect[] the groundwater." (ERAC De Novo Tr. at 202.) Ms. Reed noted that, because installing a cap over the pond was a "remedial activity that prevents . . . infiltration of water through the waste," using both a liner and a cap together would be "over-remedying," because "only one of those is sufficient." (ERAC De Novo Tr. at 113.) Ms. Reed stated the director would typically "choose one or the other," i.e. choose either a cap or a liner, because "if there's a cap, [OEPA] would not see the need for a liner." (ERAC De Novo Tr. at 116.)

{¶ 37} Additionally, Mr. Vonderembse testified that the director considered whether retrofitting Pond B with a liner was necessary for closure. Mr. Vonderembse stated the director determined a liner was unnecessary because "of the cap that was going to be placed . . . [w]hich [was] a remedial measure." (ERAC De Novo Tr. at 437.) Mr. Vonderembse affirmed that, once Pond B was dewatered, capped, and closed, it would "minimize the risk of contamination to groundwater" because the "pile [would] shed water instead of hold[ing] it as a pond." (ERAC De Novo Tr. at 601.)

{¶ 38} NOPE did not address the proposed closure methods of dewatering and capping Pond B in its May 26, 2021 notice of intent to sue letter. Therefore, NOPE's general objection to the unlined nature of Pond B in the notice of intent to sue letter did not inform the director of NOPE's position on the pending application to close Pond B.

{¶ 39} While NOPE also alleged in the letter that CLP/NRDC's overall closure activities at Beckjord failed to follow the RCRA, NOPE's contentions regarding CLP/NRDC's closure activities under the RCRA did not inform the director of NOPE's position on CLP/NRDC's specific plan to close Pond B under Ohio law. Mr. Taliaferro

affirmed Ohio "does not have a federally approved CCR program," and further affirmed Ohio "doesn't implement the federal CCR rule on federal CCR sites" because "[t]hat's handled by the U.S. EPA." (ERAC De Novo Tr. at 40.) Thus, because OEPA would not apply the federal closure requirements contained in the RCRA, we cannot say that NOPE's statement indicating CLP/NRDC's closure activities at Beckjord failed to comply with the RCRA presented the director with a statement relevant to the pending Pond B PTI. Accordingly, we find the notice of intent to sue letter did not amount to an appearance by NOPE in the proceeding before the director for the Pond B PTI.

{¶ 40} The series of emails document communications from 2021 and 2022 between NOPE's counsel, Dave Altman, and OEPA's counsel, Todd Anderson. On March 11, 2021, Mr. Altman sent Mr. Anderson an email "follow[ing] up on the[ir] March 4 phone conference about Beckjord." (NOPE Ex. 41 at 5.) In the March 11 email, Mr. Altman asked Mr. Anderson to produce various records, including "[t]he chemical composition of the waste (including fly ash and bottom ash) in each pond (A, B, C, and C Extension)," the "groundwater monitoring data for each pond and for the overall Beckjord site," any sampling data or information regarding "contamination around or under each Beckjord pond," any "[c]losure plans/applications for each Beckjord pond," and "[a]ny Ohio-issued PTIs for Beckjord." (NOPE Ex. 41 at 5.) On March 24, 2021, Mr. Altman sent Mr. Anderson an email clarifying that, in addition to the waste composition records for each pond, NOPE also wanted "records that show the waste composition even if they show the chemical composi[tion] of the fly ash and bottom ash waste from *any source* at Beckjord." (Emphasis in original.) (NOPE Ex. 41 at 4.)

{¶ 41} On April 7, 2021, Mr. Altman sent an email to Mr. Anderson requesting "an OEPA January 10, 2013 guidance document regarding 'Coal Ash Impoundment Closure Requirements.' " (NOPE Ex. 41 at 3.) Mr. Altman noted the "document may or may not actually carry that title, but the guidance from that date and on that subject is what we are after." (NOPE Ex. 41 at 3.) On July 7, 2021, Mr. Altman sent Mr. Anderson an email stating he would like to arrange a meeting to "get answers to some questions about the Ohio EPA's handling of coal ash/utility waste in the vicinity of homes of NOPE's members in Clermont County." (NOPE Ex. 41 at 2.) And on October 4, 2021, Mr. Altman sent Mr. Anderson an email stating NOPE "received partial information" on October 1, 2021 "about the Ohio

EPA's approval of CLP/NRD Pond B 'Closure Plan' " and asserting OEPA issued the Pond B PTI "without even reaching out to the community." (NOPE Ex. 41 at 1.)

{¶ 42} While the October 4, 2021 email expressly addressed the Pond B PTI, the October 4 email occurred well after the director's September 3, 2021 issuance of the Pond B PTI. Accordingly, NOPE's statements in the October 4 email could not amount to an appearance before the director in the proceedings for the Pond B PTI. Rather, after the director issued the PTI, NOPE's recourse was to appeal the PTI to the commission pursuant to the appropriate R.C. Chapter 3745 section.

{¶ 43} The emails that pre-date the September 3, 2021 issuance of the Pond B PTI do not address the pending application for the Pond B PTI in any way. The emails document NOPE's request for various items, including any pending closure applications for the Beckjord ponds, but NOPE's document requests did not present the director with NOPE's position on the application for the Pond B PTI. Indeed, the emails do not even contain a general statement indicating NOPE opposed CLP/NRDC's proposed closure of Pond B. As such, we find the emails fail to demonstrate any communication presenting the director with NOPE's position, arguments or contentions regarding the proposed Pond B PTI.

{¶ 44} At oral argument before this court, NOPE's counsel indicated NOPE did not received any closure plans or applications for the Beckjord ponds in response to its March 11, 2021 email request. CLP/NRDC's application for the Pond B PTI was pending at the time of NOPE's March 11, 2021 email. We recognize the director's decision not to issue a proposed action in the present case, and OEPA's failure to respond to NOPE's March 11 request for any pending closure applications, essentially deprived NOPE of the ability to present the director with NOPE's position on CLP/NRDC's proposed closure plan for Pond B.

{¶ 45} Nevertheless, this situation demonstrates precisely why the General Assembly enacted the appeal provision for non-parties in R.C. 3745.07. R.C. 3745.07 states the director "may" issue a proposed action before issuing or denying a permit. Thus, the statute gives the director discretion to decide whether to issue a proposed action. *See Columbus v. Reiner*, 2018-Ohio-975, ¶ 19 (10th Dist.), quoting *State ex rel. Niles v. Bernard*, 53 Ohio St.2d 31, 34 (1978) (stating the " '[u]sage of the term "may" is generally

construed to render optional, permissive, or discretionary the provision in which it is embodied' "). When the director does not issue a proposed action on a pending application for a permit, non-applicants are unlikely to be aware of the pending application. Therefore, non-applicants, such as NOPE, will typically not be able to provide the director with their position on the proposed permit. R.C. 3745.07 specifically provides such indirectly affected, and previously unaware parties, with an avenue to appeal the director's action to the commission. *Gen. Motors*, 63 Ohio St.2d at 238.

{¶ 46} Our review of the record demonstrates NOPE failed to establish the first element of the two-part test under R.C. 3745.04(B), because NOPE did not "appear before the director" and present its position regarding the application for the Pond B PTI. *Martin*, 1996 Ohio App. LEXIS 4288, at *3. As such, NOPE was not a "party to a proceeding before the director" for purposes of R.C. 3745.04(B) and therefore lacked standing to appeal the Pond B PTI pursuant to R.C. 3745.04. Because NOPE could not appeal the Pond B PTI under R.C. 3745.04, and because NOPE failed to timely file its notice of appeal pursuant to R.C. 3745.07, the commission lacked jurisdiction to entertain NOPE's appeal of the Pond B PTI.

{¶ 47} Based on the foregoing, we sustain CLP/NRDC's first and second assignments of error on cross-appeal and remand the matter to the commission for it to dismiss NOPE's appeal. Our ruling on CLP/NRDC's cross-appeal renders the assignments of error in NOPE's appeal moot. *See* App.R. 12(A)(1)(c).

## IV. Conclusion

{¶ 48} Having sustained CLP/NRDC's first and second assignments of error on cross-appeal, thereby rendering moot NOPE's first, second, third, and fourth assignments of error, we reverse the Environmental Review Appeals Commission's order and remand the case to the commission for further proceedings in accordance with law and consistent with this decision.

*Order reversed*; *cause remanded.*

DORRIAN and DINGUS, JJ., concur.

————————————